**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| MEENA R. PINNINTI, et al., | : | CIVIL ACTION NO. 09-5356 (MLC) |
|  | : |  |
| Plaintiffs, | : | **MEMORANDUM OPINION** |
|  | : |  |
| v. | : |  |
|  | : |  |
| NRI MEDICAL COLLEGE (NRIAS), | : |  |
|  | : |  |
| Defendant. | : |  |

**COOPER, District Judge**

The plaintiffs, Meena R. Pinninti ("Meena"), Ranga R.
Pinninti ("Ranga"), and Sunitha Pinninti ("plaintiffs"), brought
this action against the defendant, NRI Medical College (NRIAS)
("NRIAS" or "defendant"), asserting claims for breach of
contract, unjust enrichment, violation of the New Jersey Consumer
Fraud Act, N.J.S.A. § 56:8-1 et seq., violation of the Plain
Language Act, N.J.S.A. § 56:12-1 et seq., and negligence, and
seeking a judgment declaring that Meena disaffirmed the contract
at issue. (Dkt. entry no. 1, Compl. at 3-17.)

The defendant now moves to dismiss the Complaint based on
lack of personal jurisdiction, ostensibly pursuant to Federal
Rule of Civil Procedure ("Rule") 12(b)(2). (Dkt. entry no. 7,
Mot. to Dismiss.) The plaintiffs oppose the motion. (Dkt. entry
no. 9, Pls.' Opp'n Br.) The Court determines the motion on the
briefs without an oral hearing, pursuant to Rule 78(b). For the
reasons stated herein, the Court will grant the motion.

**BACKGROUND**

The plaintiffs are domiciled and reside in New Jersey, and for jurisdictional purposes are deemed citizens of New Jersey. (Compl. at ¶ 1.)  The defendant is a not-for-profit medical school located in the state of Andhra Pradesh, India.  (<u>Id.</u> at ¶ 2; dkt. entry no. 7, NRIAS Br. at 4.)

NRIAS was founded in 2003 by a group of physicians in the United States who were born and raised in the vicinity of the school, a largely rural and poor area of two million people. (NRIAS Br. at 4.)  The school admits 150 students annually, of whom approximately ten or twelve come from the United States. (Dkt. entry no. 7, Mukkamala Decl., at ¶ 7.)  Since its founding, NRIAS has admitted approximately 1,000 students, of whom sixty have been from the United States, and five have been from New Jersey.  (<u>Id.</u> at ¶ 9.)  NRIAS relies on word of mouth within the Indian community to recruit applicants from the United States. (<u>Id.</u> at ¶ 11.)  NRIAS does not own property, maintain bank accounts, or have offices or representatives in New Jersey.  (<u>Id.</u> at ¶ 12.)

Dr. AppaRao Mukkamala is the President of NRIAS.  (<u>Id.</u> at ¶ 1.)  Dr. Mukkamala resides in Grand Blanc, Michigan, and his home address appears on the NRIAS website as an address where applications for admission can be sent within the United States. (<u>Id.</u> at ¶ 14.)  The NRIAS website, www.nrias.com, is hosted on a

2

computer located in India, and its content provides information about NRIAS to patients, physicians, teachers, students, alumni, donors, applicants, and the public at large.  (Id. at ¶¶ 15-16.) On the page specific to the medical school, an applicant can learn about courses, faculty, and the application process, including eligibility requirements and costs.  (Id. at ¶¶ 17-18.) A potential applicant may download the application, and the application page instructs the potential applicant to mail the completed application, along with a passport photo of the applicant, academic transcripts, two letters of recommendation, and a check for $100 payable to NRIAS, to NRIAS at Dr. Mukkamala's address in Grand Blanc, Michigan.  See Application for Admission, http://www.nrias.com/nriapplication.htm.[1]

Meena, at the time a seventeen-year-old high school senior, downloaded the Application for Admission on her computer at her parents' home in New Jersey, completed it, and mailed the application along with the other requisite application materials to NRIAS's Michigan address.  (Compl. at ¶ 10; Pls.' Opp'n Br. at

---

[1] Although the Application for Admission contains text-entry fields for the required information and a "Submit" button at the bottom of the page, the instructions at the top clearly instruct that the applicant "[p]rint this form out from your computer and fill out pages 1 through 5 by TYPING or PRINT NEATLY.  Then sign and mail the completed form" to the address in Grand Blanc.  It is not clear what purpose the "Submit" button serves, and Dr. Mukkamala avers that "the website does not permit the application to be submitted on-line.  Applications cannot be emailed either." (Mukkamala Decl. at ¶ 19.)

6; Mukkamala Decl. at ¶ 22.)  Meena's application is dated May
28, 2007.  (Dkt. entry no. 17, Cert. of Ranga Pinninti ("Pinninti
Cert."), Ex. C-1, Application for Admission.)

        The plaintiffs had heard about NRIAS from an acquaintance
who was enrolled there.  (Pinninti Cert. at ¶ 7.)  On May 27,
2007, Meena's father, Ranga, had sent an email to Dr. Mukkamala
stating, "I am interested to join my daughter Meena in NRI
Medical college. . . . The[] application for the admission will
be forwarded to you shortly."  (Mukkamala Decl., Ex. A.)  On May
28, 2007, Ranga called Dr. Mukkamala at his contact number in
Michigan to further discuss Meena's application.  (Dkt. entry no.
9, Pls.' Opp'n Br. at 21; Pinninti Cert. at ¶ 8.)  Dr. Mukkamala
responded on May 29, 2007, confirming the previous day's
telephone conversation and stating: "I'm please [sic] to inform
you that we could offere [sic] admission for your daughter, Meena
Pinninti.  Please complete the application and send it to me
ASAP.  My secretary Mary Ann will guide you through the
application process. . . . The capitation is . . . $150,000 [and]
can be paid either in [rupees] or dollars."  (Mukkamala Decl.,
Ex. B.)  Dr. Mukkamala included his secretary's contact
information in Michigan in this email.  (Id.)

        Ranga sent Meena's application along with the $100
application fee via overnight mail to the address in Michigan and

4

wrote an email to Dr. Mukkamala on May 29, 2007, advising the same.  (Pinninti Cert. at ¶ 12; Mukkamala Decl., Ex. C.)[2]

The parties agree that Dr. Mukkamala's offer of admission was subject to (1) Meena's completion of the Application for Admission, and (2) advance payment of the full $150,000 tuition for the five and a half-year program.  (Pinninti Cert. at ¶ 12; Mukkamala Decl. at ¶ 25.)  Meena received a letter at her parents' address in New Jersey, from Dr. Mukkamala in Michigan, dated June 1, 2007, confirming her admission and stating that tuition was due by July 1, 2007.  (Pinninti Cert., Ex. F.)

Ranga contacted Dr. Mukkamala's secretary, Mary Ann Reiser, for instructions regarding the payment of Meena's tuition.  (Pinninti Cert. at ¶ 14.)  Reiser sent Ranga an email advising that tuition could be paid by sending a check to the Michigan address, or by wire transfer to India.  (Id. at ¶ 15 & Ex. G.)  Ranga sent personal checks on June 11, 2007, and July 23, 2007, each in the amount of $75,000, to the Michigan address.  (Mukkamala Decl., Ex. D; Pinninti Cert., Exs. H, J & K.)  The checks were deposited by Reiser in NRIAS's account at the National Republic Bank of Chicago and "credited to the account of" NRIAS.  (Pinninti Cert. at ¶ 18.)

---

[2] The paragraphs of the Pinninti Certification are not consecutively numbered; however, the Court refers to the paragraphs as they are numbered because no number appears twice.

Meena started classes at NRIAS in India in August 2007. (Mukkamala Decl. at ¶ 27.)  She became seriously ill a few months thereafter, and was cared for at the NRIAS hospital in India. (Id. at ¶ 28.)  In January 2008, Meena withdrew from NRIAS. (Pinninti Cert. at ¶ 27.)  NRIAS refused to refund any part of her tuition.  (Compl. at ¶ 21; Pinninti Cert. at ¶ 28.)  The plaintiffs brought this action to recover the tuition paid in advance, arguing, inter alia, that the contract is invalid because Meena was a minor at the time of contracting, and has since disaffirmed the contract.

The plaintiffs appear to argue that NRIAS is subject to personal jurisdiction in New Jersey because either (1) Meena and NRIAS made a contract in New Jersey, because Meena was in New Jersey when she accepted the defendant's offer to attend its medical school by mailing a completed application and paying the sum of $150,000, or (2) NRIAS's website constitutes advertising that is aimed at potential applicants in the United States, including New Jersey.  (Pls.' Opp'n Br. at 18-22, 26.)  The defendant responds that it has no physical presence outside of India, does not solicit students from the United States, and its website is not interactive and is not directed into New Jersey. (NRIAS Br. at 4.)

6

**DISCUSSION**

I.   **Applicable Legal Standards**

A.   **Personal Jurisdiction**

Rule 4(e) allows a district court to assert personal jurisdiction over a non-resident defendant to the extent permitted by the law of the state where the district court sits. See Fed.R.Civ.P. 4(e).  New Jersey's long-arm statute, N.J.Ct.R. 4:4-4, permits a court to exercise personal jurisdiction over a non-resident defendant to the furthest extent allowed by the United States Constitution.  Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 96 (3d Cir. 2004); see Avdel Corp. v. Mecure, 277 A.2d 207, 209 (N.J. 1971) (noting that New Jersey's long-arm statute allows out-of-state service "to the uttermost limits permitted by the United States Constitution").  The Fourteenth Amendment Due Process Clause, however, prohibits the exercise of personal jurisdiction "over a nonresident defendant who does not have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n, 819 F.2d 434, 437 (3d Cir. 1987) (internal quotations omitted; alteration in original).

A defendant's purposeful conduct and connection with the forum state must be such that the defendant "should reasonably anticipate being haled into court there."  World-Wide Volkswagen

Corp. v. Woodson, 444 U.S. 286, 297 (1980). "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958). The purposeful availment requirement ensures that a defendant will not be required to litigate in a forum solely as a result of "random," "fortuitous," or "attenuated" contacts, or the unilateral activity of another person. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985); see also Hanson, 357 U.S. at 253.

Once a defendant raises lack of personal jurisdiction as a defense, the plaintiff must demonstrate that the defendant has sufficient contacts with the forum to justify the exercise of jurisdiction. N. Penn Gas Co. v. Corning Natural Gas Corp., 897 F.2d 687, 689 (3d Cir. 1990); Provident Nat'l Bank, 819 F.2d at 437. A plaintiff may meet this burden by establishing that the court has either "general" or "specific" jurisdiction. Provident Nat'l Bank, 819 F.2d at 437. A plaintiff need only make a prima facie demonstration of jurisdiction by showing with sufficient particularity the presence of contacts between the defendant and the forum. See, e.g., Mellon Bank (E.) PSFS, Nat'l Ass'n v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992). A court, in examining whether the plaintiff has satisfied this prima facie

burden, must resolve all disputes of material fact in favor of the plaintiff.  See, e.g., Miller Yacht Sales, Inc., 384 F.3d at 97.

General jurisdiction exists when the defendant has continuous contacts with the forum state that are unrelated to the events forming the basis of the cause of action.  See Provident Nat'l Bank, 819 F.2d at 437; Machulsky v. Hall, 210 F.Supp.2d 531, 538 (D.N.J. 2002).  To establish general jurisdiction, a plaintiff must show significantly more than mere minimum contacts with the forum state.  Provident Nat'l Bank, 819 F.2d at 437; Decker v. Circus Circus Hotel, 49 F.Supp.2d 743, 747 (D.N.J. 1999).  A plaintiff bears the "rigorous" burden of demonstrating that the defendant has "continuous and systematic" contacts with the forum state such that the defendant should expect to be haled into court on any cause of action. Helicopteros Nacionales de Colom., S.A. v. Hall, 466 U.S. 408, 414-16, 415 n.9 (1984); Provident Nat'l Bank, 819 F.2d at 437. The facts required to establish general jurisdiction must be "extensive and persuasive."  Reliance Steel Prods. Co. v. Watson, Ess, Marshall & Enggas, 675 F.2d 587, 589 (3d Cir. 1982); Decker, 49 F.Supp.2d at 747.  The plaintiffs do not claim that New Jersey has general personal jurisdiction over NRIAS.  (Pls.' Opp'n Br. at 16 (stating plaintiffs "assert specific jurisdiction against" NRIAS).)

9

Specific jurisdiction over a defendant exists when the defendant has purposefully directed activities at residents of the forum and the claim directly relates to or arises out of those activities. Burger King Corp., 471 U.S. at 472; Miller Yacht Sales, Inc., 384 F.3d at 96. The activities must "rise to the level of minimum contacts with the state, such that the defendant should reasonably anticipate being haled into court there." Exton v. Our Farm, Inc., 943 F.Supp. 432, 438 (D.N.J. 1996). The critical factor is whether defendant "purposely avail[ed] itself of the privilege of conducting activities with the forum State." Machulsky, 210 F.Supp.2d at 538. Jurisdiction is proper where the contacts proximately result from the defendant's own actions, which create a substantial connection with the forum. Burger King Corp., 471 U.S. at 475. Although a defendant's entrance into the forum state enhances the defendant's affiliation with that forum, physical entrance into the forum is not required. Id. at 476.

If a court determines that the defendant has purposefully established minimum contacts with the forum state, then the court must decide whether the exercise of personal jurisdiction comports with "fair play and substantial justice." Id. In addressing this question, a court may consider "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining the most efficient

resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies."  Miller Yacht Sales, Inc., 384 F.3d at 97 (quotation and citation omitted).  Only rarely will the fairness requirement defeat jurisdiction where a defendant has purposefully engaged in forum activities.  Decker, 49 F.Supp.2d at 746.

**B.   Personal Jurisdiction in Internet Cases**

Where a court seeks to exercise personal jurisdiction based on the defendant's website or Internet activity, "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that [defendant] conducts over the Internet."  Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F.Supp. 1119, 1124 (W.D. Pa. 1997); see also Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 452 (3d Cir. 2003).  Personal jurisdiction is properly exercised over a defendant using the Internet to conduct business in the forum state.  Toys "R" Us, Inc., 318 F.3d at 452; Machulsky, 210 F.Supp.2d at 538-39; Zippo Mfg. Co., 952 F.Supp. at 1124.  Personal jurisdiction may not be properly exercised over a defendant with a website merely providing information to interested persons and not allowing the user to exchange information with the host computer.  Zippo Mfg. Co., 952 F.Supp. at 1124; Machulsky, 210 F.Supp.2d at 538-39.  Where the website allows a user to exchange information with the host computer, the

court must examine "the level of interactivity and commercial nature of the exchange of information that occurs on the Web site" to determine if the exercise of personal jurisdiction is proper. Zippo Mfg. Co., 952 F.Supp. at 1124.

The general rule that specific jurisdiction is proper where a defendant intentionally reaches out and conducts business in a foreign jurisdiction remains unchanged where the business is conducted through a website. Zippo Mfg. Co., 952 F.Supp. at 1124. A defendant, therefore, is not subject to personal jurisdiction in any jurisdiction merely because the defendant's website is commercially interactive. Toys "R" Us, Inc., 318 F.3d at 454. Rather, "there must be evidence that the defendant 'purposefully availed' itself of conducting activity in the forum state, by directly targeting its web site to the state, knowingly interacting with residents of the forum state via its web site, or through sufficient other related contacts." Id. A court may include a defendant's non-Internet contacts with the forum state in making its "purposeful availment" determination. Id. at 453. Thus, a defendant purposefully avails itself of the forum state where the defendant conducts business with the forum state's residents and knowingly ships its products to the forum state. See L'Athene, Inc. v. Earthspring LLC, 570 F.Supp.2d 588, 593-94 (D. Del. 2008); Machulsky, 210 F.Supp.2d at 539.

### C.    Personal Jurisdiction in Contract Cases

When considering a contract claim, the court "inquire[s] whether the defendant's contacts with the forum were instrumental in either the formation of the contract or its breach." Gen. Elec. Co. v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001) (citation omitted).  Defendants who "reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation." Burger King Corp., 471 U.S. at 473 (internal quotation and citation omitted).  When a defendant receives "the benefits and protections of the forum's laws by engaging in business activities with a forum resident, the courts have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there." Remick v. Manfredy, 238 F.3d 248, 257 (3d Cir. 2001) (internal quotations and citation omitted).  If minimum contacts are established, the court then assesses whether assertion of specific personal jurisdiction "comports with fair play and substantial justice." On-Time Staffing, LLC v. Flexible Staffing Solutions, Inc., No. 06-3951, 2007 WL 1234978, at *5 (D.N.J. Apr. 25, 2007) (quotation and citation omitted).

In deciding whether personal jurisdiction is present in a contract claim, the court considers "the totality of the circumstances, including the location and character of the contract negotiations, the terms of the contract, and the

13

parties' actual course of dealing." <u>Remick</u>, 238 F.3d at 256
(citation omitted).  Personal jurisdiction is properly found when
the contract is "of a long term, ongoing nature, rather than a
one-time occurrence or single transaction." <u>On-Time Staffing,
LLC</u>, 2007 WL 1234978, at *4 (citation omitted).

> ### D.   Personal Jurisdiction over Non-Resident Institutions of Higher Education

"The unilateral activity of those who claim some
relationship with a nonresident defendant cannot satisfy the
requirement of contact with the forum State." <u>Hanson</u>, 357 U.S.
at 253.  In other cases involving contracts formed between a non-
resident institution of higher education and a prospective
student, courts have held that contacts from the institution
directed into the forum state in response to inquiries from the
prospective student do not constitute sufficient minimum contacts
to subject the institution to specific personal jurisdiction.
<u>See</u> <u>Rodi v. So. New England Sch. of Law</u>, 255 F.Supp.2d 346, 350-
51 (D.N.J. 2003) (determining that minimum contacts did not exist
where the plaintiff prospective student asserted specific
jurisdiction based on (1) an acknowledgment letter in response to
the plaintiff's inquiries about the school, and (2) an acceptance
letter sent to the plaintiff in New Jersey).  The plaintiff in
<u>Rodi</u> failed to proffer any jurisdictional facts beyond the
results of his own unilateral actions, and the court further
noted that "subjecting an institution of higher education to

14

jurisdiction in every state into which it grants requests for information does not comply with traditional notions of fair play and substantial justice." Id. at 351.

The mere fact that an institution enrolls other students from the forum state is not by itself indicative of purposeful availment of the forum state. See Gehling v. St. George's Sch. of Med., 773 F.2d 539, 542-43 (3d Cir. 1985) ("[T]he fact that St. George's may be said to derive some percentage of its revenues from [forum] residents in return for services provided in Grenada does not subject it to in personam jurisdiction."); Severinsen v. Widener Univ., 768 A.2d 200, 206 (N.J. 2001).

## II.  Legal Standards Applied Here

The plaintiffs do not contend--nor could they--that NRIAS is subject to general jurisdiction in New Jersey.  Rather, they assert specific jurisdiction.  (Pls.' Opp'n Br. at 16.) Accordingly, we consider whether NRIAS has sufficient minimum contacts with New Jersey to subject it to specific jurisdiction, looking to "the relationship among the defendant, the forum, and the litigation." McGee v. Int'l Life Ins. Co., 255 U.S. 220, 223 (1957).

### A.   NRIAS Website

The plaintiffs suggest that the NRIAS website could subject NRIAS to personal jurisdiction in New Jersey.  (Pls.' Opp'n Br. at 12.)  The plaintiffs are wrong.

NRIAS does not conduct "commercial" activity over its website, as it is a not-for-profit institution of higher learning.  Courts are less inclined to subject an institution of higher education to personal jurisdiction than business entities "seeking economic entry into [the forum state's] marketplace. . . . It is arguable that in determining whether general jurisdiction exists the spreading of education and the selling of widgets are not equivalent."  Severinsen, 768 A.2d at 204.

The NRIAS website also is largely informational.  The plaintiffs contend that the website is "interactive" because it contains a "Contact Us" page, which potential applicants may use to submit their names, email addresses, locations, and comments or questions.  (Pls.' Opp'n Br. at 12.)  However, the plaintiffs concede that when Meena applied to NRIAS in 2007, "the website was not set up to send in an Application for Admission by email." (Id.)  Instead, the website directed potential applicants to use the website to download the Application for Admission, which by its own terms instructed the applicant to mail the completed application and other requisite materials to NRIAS at the Michigan address.  Because application information was necessarily exchanged in this case (and for all applicants) through the mail, the Court cannot find that the NRIAS website was "commercially interactive--that is, capable of executing contracts over the Internet"--such that NRIAS is subject to

16

personal jurisdiction in New Jersey by reason of its website. Adelman v. Peter, No. 06-6007, 2007 WL 4557651, at *6 (D.N.J. Dec. 21, 2007) (finding that website allowing potential patrons of club to make reservations and sign up for an email list was "not commercially interactive" and did not subject defendant to personal jurisdiction in New Jersey).  To the extent the website's "Contact Us" page enabled NRIAS to respond to an inquiry by email (as opposed to an automatically-generated response from the host computer), email communications "must occur within the context of other 'substantial' connections to the forum in order to constitute purposeful availment." Machulsky, 210 F.Supp.2d at 539 (citing Barrett v. Catacombs Press, 44 F.Supp.2d 717, 729 (E.D. Pa. 1999)).  As discussed below, such "substantial" connections are lacking here.

The plaintiffs also do not contend that the NRIAS website is specifically targeted to potential applicants in New Jersey. Providing information, and even responding to inquiries, "falls short of constituting the 'something more' necessary to demonstrate purposeful availment," because NRIAS "neither targets its website at New Jersey residents nor conducts any online business with New Jersey residents." Ameripay, LLC v. Ameripay Payroll, Ltd., 334 F.Supp.2d 629, 635 (D.N.J. 2004).  Awareness that the NRIAS website could be accessed from New Jersey and that New Jersey residents might apply for admission after viewing the

information on the website "does not mean that [NRIAS] purposefully directed [its] activities at residents of" New Jersey or purposefully availed itself of doing business with New Jersey citizens.  <u>Kloth v. So. Christian Univ.</u>, 494 F.Supp.2d 273, 279 (D. Del. 2007) (finding that university's website could not serve as basis for specific jurisdiction); <u>Tocci v. Antioch Univ.</u>, No. 07-1341, 2007 WL 2362592, at *3 (D.N.J. Aug. 15, 2007).

## B.    Contract Between Meena and NRIAS

The plaintiffs contend that "there is no question that the contract between NRI medical college and Meena Pinninti was made in New Jersey.  NRI's offer was accepted in New Jersey.  NRI was paid by two checks drawn on a New Jersey checking account." (Pls.' Opp'n Br. at 26.)

These facts are insufficient to serve as a basis for exercising personal jurisdiction over NRIAS.  "Generally, the act of entering into a contract within a foreign jurisdiction, without more, cannot serve as a basis for asserting personal jurisdiction over a nonresident defendant."  <u>Machulsky</u>, 210 F.Supp.2d at 539.  As with the NRIAS website, the plaintiffs fail to show the "something more" demonstrating that NRIAS purposefully availed itself of doing business in New Jersey such that it could reasonably expect to be haled into court here. <u>Provident Nat'l Bank</u>, 819 F.2d at 437.

18

The contract between Meena and NRIAS in which Meena paid tuition in exchange for a seat in the NRIAS medical college came about as a result of the plaintiffs' unilateral actions.  The plaintiffs called Dr. Mukkamala to inquire about admission, the plaintiffs emailed Dr. Mukkamala to inform him that Meena had applied, and the plaintiffs sent the completed application and full tuition payment to the Michigan address.  All of the actions taken by Dr. Mukkamala on behalf of NRIAS directed to the plaintiffs in New Jersey, such as Meena's acceptance letter, were in response to actions of the plaintiffs and occurred in Michigan.  This is insufficient to make the requisite showing that NRIAS "purposefully avail[ed] itself of the privilege of conducting activities within the forum."  Hanson, 357 U.S. at 253; Gehling, 773 F.2d at 544 ("[W]e cannot say that St. George's 'purposefully availed' itself of the 'privilege of acting' within Pennsylvania by mailing its letter of acceptance to the decedent."); Rodi, 255 F.Supp.2d at 350-51 (response to inquiries about school and acceptance letter were responses to plaintiff's unilateral actions, not purposeful conduct targeted to forum state); Tocci, 2007 WL 2362592, at *4 (declining to impose specific jurisdiction where defendant university "was merely responding to actions taken by" the plaintiff).  NRIAS lacks minimum contacts with New Jersey to justify this Court's exercise of personal jurisdiction over it.

Even if NRIAS did have more extensive contacts with the forum than the ones referred to here, it is well-established that "subjecting an institution of higher education to jurisdiction in every state into which it grants requests for information does not comply with traditional notions of fair play and substantial justice." Rodi, 255 F.Supp.2d at 351; see also Gehling, 773 F.2d at 544. The single transaction pointed to by the plaintiffs, which came about as a result of the plaintiffs' conduct rather than the defendant's, simply does not confer personal jurisdiction over NRIAS in this Court. See Hanson, 357 U.S. at 251-54.

NRIAS lacks minimum contacts with New Jersey, and the plaintiffs have failed to demonstrate that NRIAS purposefully availed itself of conducting business in New Jersey based on either the contract or its website. Because the remainder of the plaintiffs' jurisdictional arguments are essentially derivative of the contract and the website, they too lack merit and will not be further addressed. (See Pls.' Opp'n Br. at 26-39.)

20

**CONCLUSION**

The Court, for the reasons stated <u>supra</u>, will grant the motion to dismiss for lack of personal jurisdiction, without prejudice.  The Court will issue an appropriate order and judgment.

    s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge

Dated:    June 4, 2010